IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE T. WORTMAN and SHANE W. WORTMAN, individually, and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES LLC,<br><br>  Defendant. | Case No. 18-cv-04894<br><br>The Honorable John J. Tharp, Jr. |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO 12(B)(6) MOTION TO DISMISS**

Plaintiffs NICOLE T. WORTMAN and SHANE W. WORTMAN ("Plaintiff"), by and through their counsel, James C. Vlahakis, submit the following as their Response in Opposition to Defendant RUSHMORE LOAN MANAGEMENT SERVICES LLC's ("Defendant") Rule 12(b)(6) Motion to Dismiss (dkt. 17):

**INTRODUCTION – SUMMARY OF THE CASE**

This civil action has been brought pursuant to Fed. R. Civ. P. 23 by Plaintiffs on behalf of all others similarly situated, seeking redress for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.* Plaintiffs agree with Defendant, their claim is simple and straightforward: "Rushmore violated the FDCPA by sending them a monthly mortgage statement after they obtained a bankruptcy discharge." *See*, Defendant's Motion to Dismiss and Incorporated Memorandum of Law ("Motion"), dkt. 17, p. 1. Plaintiffs, however, disagree with Defendant's two arguments in support of the dismissal of this putative class action.

As this Court will recall, Defendant's initial response to the putative Class Action Complaint (dkt.1), was to move to stay this case on the basis of the "first-filed rule."

1

See, dkt. 12. The sole argument in support of the motion to stay under the first-filed rule was "[w]hether there is a certifiable class concerning [Defendant's] post-discharge mortgage statements is currently being adjudicated in the 11th Circuit." Dkt. 12, p. 1. Defendant's Motion to Stay went on to argue that "[t]he mortgage statement [Defendant] sent to Wortmans is functionally identical to the one sent to the Sellerses, and the gravamen of both complaints is that said mortgage statements violate the FDCPA." *Id.* at p. 2. Defendant's Motion to Stay argued that "[t]he only real difference is that the Sellerses sought to represent a Florida-only class, and the Wortmans seek to represent a nationwide class." *Id.* Defendant then argued that this putative class action should be stayed on the sole basis that "the 11th Circuit is going to decide whether class certification is appropriate for a claim based on the post-discharge receipt of the same account statement that Wortmans received." *Id.* Defendant's Introduction section of its Motion to Stay ended with the following statement: "This Court deserves to know how the 11th Circuit answers the functionally identical class certification question before reinventing the wheel in this case." *Id.* Plaintiffs argued in open court that the first-filed rule did not prohibit the prosecution of similar simultaneous class actions in different jurisdictions. The Court agreed and denied Defendant's Motion to Stay.

The first-filed putative class action that is being litigated before the 11th Circuit in the of *Sellers v. Rushmore*, 3:15-cv-1106-J-32PDB (M.D. Fla.). The summary of the Sellers litigation is set forth in Judge Timothy J. Corrigan's December 12, 2017, ruling on Defendant's Motion for Reconsideration of Ruling on Summary Judgment and the putative class representative's Renewed Motion for Class Certification. *See, Sellers v. Rushmore,* 2017 U.S. Dist. 203736, *1-*2, 2017 WL 644315 (M.D. Fla., Dec. 12, 2017). On September 11, 2015, the Sellers filed their putative class action complaint. The

Sellers, like Mrs. and Mr. Wortman, complained that they had received a Chapter 7 discharge of their personal liability on a mortgage debt and that Defendant, as the servicer of their loan, sent them a mortgage statement which claimed that the Sellers owed the amount listed on the mortgage statement. *Id.* \*3. On May 26, 2017, he denied summary judgment as to two counts, holding that a jury should determine whether the mortgage statement violated the FDCPA as to Counts I and II of the putative class action complaint. *Id.* \*3-\*4; 2017 U.S. Dist. LEXIS 67120, \*12-\*18 (MSJ ruling).[1] Some of the exact language before the court in *Sellers* is used of the Mortgage Statement (*Id.* \*5):

> Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

This is not the first time that Defendant has lost summary judgment. Defendant's Motion did not cite to *Williams v. Rushmore Loan Mgmt. Servs.,* 2018 U.S. Dist. LEXIS 55151, \*3, \*17-\*26 (D. Conn. March 31, 2018) (rejecting summary judgment for Defendant, holding "although many of the communications included a bankruptcy disclaimer, like the second letter in Whalen, they contemplated a payment plan meant to avoid foreclosure. In other words, they could reasonably be interpreted as attempts to collect the debt despite the bankruptcy disclaimers.").

Defendant's threshold argument claims that Plaintiffs have "fail[ed] to plead compliance with notice and cure provision of their mortgage." Dkt. 17, p. 1. This

---

[1] Judge Corrigan's denial of Defendant's motion for reconsideration was a pyrrhic victory for the plaintiffs because he denied their motion to certify, holding that the too many individual inquires existed in relation to the *fourth* proposed class definition. *Id.* \*6-\*10. The Sellers have appealed.

3

argument is straightforward, and is arguably framed in terms of simple factual issue and legal issues – did Plaintiffs comply with the notice and cure terms and do the terms apply as a matter of law? But contrary to Defendant's confident presentation of this argument, a close examination of the law supports the denial of Defendant's Motion to Dismiss. If this is Defendant's lead argument, what does this convey in terms of the strength of Defendant's second argument – the one that is not up on appeal?

Defendant's second argument fares no better. Defendant argues that its "mortgage statement is not a communication sent in connection with the collection of a debt." Dkt. 17, p. 1. Defendant is correct that "[n]ot all communications sent after bankruptcy are actionable under the FDCPA." But in the context of the pleading standards which govern motions to dismiss, it is not entitled to dismissal basis that "[t]he statement at issue conspicuously and unequivocally" contains language which states that "this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt." Dkt. 17, pp. 1-2. Yes, the document at issue contains the above quoted language, but the Complaint contends that this language was overshadowed by other language. Thus, although the document "unequivocally" contains the above quoted language, the Motion to Dismiss should be denied because the formatting of the Mortgage Statement resulted in the quoted language to become *inconspicuous*, and a violation of the Sections 1692e(2) and 1692e(10) of the FDCPA.

**STANDARD OF REVIEW & SUMMARY OF RELEVANT FACTS**

Defendant has set forth the appropriate standard of review for a 12(b)(6) motion. Contrary to Defendant's argument, dismissal is *not appropriate* because that subject

language "incontrovertibly contradict[s] the allegations in the complaint." Dkt. 17, p. 3-4 (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

The following allegations must be taken true for the purpose of the pending Motion to Dismiss. Plaintiffs reside in this District and are "consumers" as defined by 15 U.S.C. § 1692a(3) as they are natural persons obligated or allegedly obligated to pay a debt. Dkt. 1, ¶¶ 3-4. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as it uses instrumentalities of interstate commerce and the mail in its business. Dkt. 1, ¶¶ 6-7. On March 3, 2006, Plaintiffs executed a $279,000.00 mortgage in favor of ABN AMRO Mortgage Group, Inc. for the purpose of securing funds to purchase of Plaintiffs' personal residence. Dkt. 1, ¶¶ 11-13. ABN AMRO Mortgage Group, Inc. assigned and transferred mortgage to Lasalle Bank Midwest, N.A. *Id.* ¶ 14.

On October 1, 2016, Plaintiffs defaulted by failing to make monthly payments and on November 30, 2016, Plaintiffs initiated a bankruptcy case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Dkt. 1, ¶¶ 15-16. Notice of Plaintiff's bankruptcy case was sent to Bank of America, N.A. as reflected by the Certificate of Notice included in the body of the Complaint. *Id.* ¶¶ 17-19. The Plaintiff's bankruptcy filing identified the subject mortgage in the Schedule D Section as reflected by the Schedule D included in the body of the Complaint. *Id.* ¶¶ 20-22. The property was surrendered in full satisfaction of Bank of America, N.A.'s claims which resulted in Plaintiffs receiving a discharge pursuant to Section 1328(a) of the US Bankruptcy Code which served to discharge Plaintiffs from any personal liability for the mortgage debt. *Id.* ¶¶ 23-28 (the Discharge is included in the body of the Complaint). Thereafter, Plaintiffs' discharge was sent to Bank of America, N.A. through various methods (mail and electronically) and the Notice is included in the body of the Complaint. *Id.* ¶¶ 30-

34. Defendant is the servicer of the mortgage loan, violated the FDCPA by taking two post-discharge actions against Plaintiffs.

First, on April 16, 2018, Defendant sent Plaintiffs a "Notice of Intent to Foreclose" ("Notice"). Dkt. 1, ¶ 36. The Notice stated that "Rushmore Loan Management Services LLC (Rushmore) is currently servicing your mortgage loan[.]"). *Id.* ¶38. A true and accurate representation of part of the Notice is reflected below:

**NOTICE OF INTENT TO FORECLOSE**

Rushmore Loan Management Services LLC (Rushmore) is currently servicing your mortgage loan that is secured by the above referenced property. You are hereby formally notified that the mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

The loan is due for 10/01/2016 and subsequent payments, plus late charges, fees and costs. To cure this default, you must forward funds in the amount of $47,644.29 which consists of the following:

| | |
|---|---|
| Next Payment Due Date: | 10/01/2016 |
| Current Monthly Payment: | $2,432.19 |
| Total Monthly Payments Due: | $47,246.13 |
| Late Charges Due: | $398.16 |
| Uncollected NSF Fees: | $0.00 |
| Other Fees Due: | $0.00 |
| Suspense Balance: | $0.00 |
| TOTAL YOU MUST PAY: | $47,644.29 |

It is possible that after payment of the amounts detailed above, there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that Rushmore paid on your behalf or advanced to your account.

This letter is a formal demand to pay $47,644.29. If the default together with additional payments that subsequently become due, is not cured by May 21, 2018, Rushmore Loan Management Services LLC will take steps to terminate your ownership in the property by a foreclosure by judicial proceeding and sale of the Property.

The notice included the false and misleading representations and demands:

> "You are hereby formally notified that the mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.
> ***
> This letter is a formal demand to pay $47,644.29. If the default together with additional payments that subsequently become due, is not cured by May 21, 2018, Rushmore Loan Management Services LLC will take steps to terminate your ownership in the property by a foreclosure by judicial proceeding and sale of the property.

Dkt. 1, ¶ 37. This Notice was the first time that Defendant arrived on the scene. Defendant's Motion, attempts, without any support, to suggest that the Complaint

alleges that Plaintiffs knew that Defendant began servicing the mortgage loan on August 15, 2017, after a transfer of Bank of America, N.A.'s claim was filed. Dkt. 17, p. 2).

Defendant's second act of misconduct took place, on June 11, 2018, when it sent Plaintiff the below Mortgage Statement which demanded payment. Complaint, ¶¶41-42.





The Statement included a detachable payment coupon reflecting that $55,646.72 was owed by Plaintiff to Defendant and "Due By 07/01/2018":

<!-- payment coupon image -->

| LOAN NUMBER | DUE DATE | AMOUNT DUE | IF REC'D AFTER THIS DATE | LATE PMT AMOUNT |
|---|---|---|---|---|
| [redacted] | 07/01/2018 | $55,646.72 | 07/16/2018 | $55,735.07 |

Amount Due: Due By 07/01/2018: $55,646.72. $88.35 late fee will be charged after 07/16/2018.

Nicole T Wortman
Shane W Wortman
24633 Lincoinway St
Plainfield, IL 60544

Make checks payable to:
Rushmore Loan Management Services LLC
P.O. Box 514707
Los Angeles, CA 90051-4707

Dkt. 1, ¶¶ 42-43. A true an accurate copy of the payment coupon is reflected above.

All of these actions violated the FDCPA because they reasonable could be perceived to have been unlawful attempts to collect a debt discharged in bankruptcy.

## ARGUMENT

### A. The Notice to Cure Provision Does Not Apply to Limit This Civil Action

The gist of Defendant's first argument is that by virtue of its status as the loan's servicer it is the beneficiary of a "pre-suit notice and opportunity to cure as required by the mortgage." Dkt. 17, p. 4. Defendant relies on four district court cases (three of them from outside of this jurisdiction) to argue that this putative civil action can go no further because Plaintiffs first sought the protections of the court system rather than reaching out to a new entity that appeared on the scene after the subject mortgage was discharged. The Motion attempts, without any support, to suggest that the Complaint alleges (and that Plaintiffs knew) that Defendant began servicing the loan on August 15, 2017, after the transfer of Bank of America, N.A.'s claim was filed. Dkt. 17, p. 2.

8

The four cases, cited at page 6 of Defendant's Motion to Dismiss, and Defendant's perfunctory argument, are not persuasive. As discussed below, Defendant's boilerplate argument does not take into consideration the plethora of cases denying similar motions to dismiss brought by loan services or the fact that notice to cure provisions are narrowly construed on only apply to breach of contract claims (none are raised in this case).

Judge Matthew F. Kennelly's decision in *Abercrombie v. Wells Fargo Bank, N.A.* 417 F.Supp.2d 1006 (N.D. IL 2006) is a helpful place to begin analyzing the quality of Defendant's argument. In *Abercrombie*, Judge Kennelly addressed the interplay of a home mortgage's notice and cure provision where the plaintiff had contended (by filing suit) that the defendant bank had violated the Truth in Lending Act. Notably, the terms of the notice to cure at issue in *Abercrombie* are virtually identical words used in the language of the mortgage document. Judge Kennelly's analysis started with his recognition of the principal purpose of TILA. The purpose of TILA, like the FDCPA is to protect consumers. Judge Kennelly recognized that TILA was enacted "to assure a meaningful disclosure of credit terms" to allow consumers to "compare more readily the various credit terms" and "to protected consumers against inaccurate and unfair credit billing and credit card practices." *Id.* at 1008. Thereafter, Judge Kennelly denied Well Fargo's motion to dismiss, holding that "[e]forcement of the notice and cure provision in Wells Fargo's contract would utterly defeat this central purpose of TILA. *Id.* According to Judge Kennelly, compliance with the notice and cure provision would "come too late to permit the borrower to compare credit terms." The same is true here. Plaintiffs were confused and frightened after receiving the subject mortgage statement, a statement that was similar to an inaccurate or non-compliant TILA disclosure. *Additionally*, Judge Kennelly recognized that the notice and cure provisions were contrary public policy:

9

> In sum, the Court has found no authority supporting the enforcement of a contractual provision that amounts to a waiver of TILA's initial disclosure requirements. To the contrary, "[a] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." As the Court has made clear, contravention of the policy underlying TILA's disclosure requirements is precisely what would occur were we to enforce the notice and cure provision in Wells Fargo's contract. Because "waiver of [the borrower's] statutory rights would defeat the paramount congressional purpose behind" TILA, Abercrombie's noncompliance with the notice and cure provision does not entitle Wells Fargo to dismissal[.]

*Id.* at 1008-09 (citations omitted).

The public policy focus of Judge Kennelly's decision was prescient in 2006, as sound analysis has been adopted by other courts. For example, the court in *Taub v. World Financial Network Bank*, 950 F.Supp.2d 698, 701-02 (S.D.N.Y. 2013) (citing *Abercrombie* and holding that "Notice and cure provisions 'do not apply to suits alleging deceptive business practices . . . because TILA claims 'arise out of' alleged violation of the statute, rather than any breach of contract.'"). Just like in *Taub*, Plaintiffs are asserting statutory violations of the FDCPA and not a mere breach of contract claim.

And just like *Taub*, numerous courts that have rejected Defendant's argument on the basis that notice and cure provisions not preclude claims alleging "deceptive business practices" that exist "independently of the contract between the parties." *See, e.g., Schmidt v. Wells Fargo Home Mortg.*, 2011 U.S. Dist. LEXIS 45122, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011); *Gerber v. First Horizon Home Loans Corp.*, 2006 U.S. Dist. LEXIS 12225, 2006 WL 581082, *3 (W.D. Wash. Mar. 8, 2006)).

Defendant's Motion should also be denied because it is disputed whether Defendant can properly claim that "[a]s the servicer of the loan, Rushmore is an 'assign' of the Lender under the mortgage and is entitled to the benefit of the notice and cure provision." Dkt. 17, p. 5 (citing *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421,

422 (9th Cir. 2017). Defendant cannot conjure up a legal interpretation of a mortgage provision where the mortgage does *not* specifically say that Defendant is in fact an "assign" of the Lender (as Defendant wants this Court to believe). And the single case cited by Defendant, *Giotta,* an unreported decision, involved more developed facts to support the assignment of rights. At this stage of the case, Defendant has to do more than *claim* that it is an "assign" and protected by the notice and cure provision.

Even if Defendant had point to an incontrovertible provision of the mortgage to, its Motion should still be denied because numerous courts have rejected Defendant's argument that a servicer is entitled to invoke notice and cure provisions. For example, *Patrick v. Teays Valley Trs. LLC*, 2012 U.S. Dist. LEXIS 170395 (N.D. W.V. Nov. 30, 2012), in reviewing the identical notice and cure provision, rejected a servicer's request to dismiss the borrower's FDCPA claims on the basis that the notice and cure provision did not injure to the benefit of the servicer. According to the court:

> However, the Notice-and-Cure Provision in the Plaintiffs' Deed of Trust expressly bind the borrower and the lender–not the borrower and a loan service provider or substitute trustee. *See Schmidt v. Wells Fargo Home Mortg.*, 3:11-CV-059, 2011 U.S. Dist. LEXIS 45122, 2011 WL 1597658 (E.D. Va.Apr. 26, 2011) (holding that the notice-and-cure provision in the deeds of trust did not obligate the plaintiffs to provide notice to the loan service providers in accordance with the provision). Defendants TVT, MHS, and Stewart are not parties to the Deed of Trust; therefore, the Plaintiffs were not obligated to provide notice to TVT, MHS, and Stewart based on the provision at issue.

*Id.* at *25-*26. Similarly, *Schmidt v. Wells Fargo Home Mortg.*, 2011 U.S. Dist. LEXIS 45122, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011) held that "[t]he notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer." The court in *Schmidt* held that notice-and-cure provision did not obligate the plaintiffs/borrowers to provide notice to the service providers. In so holding, the district court identified a critical distinction in cases where courts applied notice

11

and cure provisions against borrowers to protected loan servicers. Where cure provisions have been applied to benefit servicers, servicers were sued alongside lenders:

> The cases the Defendant cites to support its argument are inapposite because they do not involve a case where a borrower is suing only a loan servicer for deceptive business practices, which is the essence of the allegations in this matter. *Gerber* involved a dispute between a borrower and lender, who are expressly bound by the notice provision in the deed of trust. *Johnson* involved a dispute between a borrower and a substitute trustee, not a loan servicer. Although a loan servicer was one of the numerous defendants in *Niyaz*, the plaintiff's case also involved the lender entitled to notice, and the court treated the numerous defendants as a group.

*Id.* at *8-*9 (citations omitted). Notably, Defendant's Motion to Dismiss cites to the case of *Johnson v. Countrywide Home Loans* which was distinguished by the district court in *Schmidt*. The court in *Teays* went one step further, and assumed (for the sake of argument) that the servicer was entitled to invoke the notice and cure provision, but ultimately concluded, just like Judge Kennelly had originally decided, the "provisions do not extend to claims based on deceptive business practices." *Id.* at *26.

Defendant's reliance on *Giotta v. Ocwen Loan Servicing,* is misplaced and distinguishable because the case involved more than just a borrower suing a servicer – which is the case here. Another critical distinction exists in this case with regard to the cases cited by Defendant – none of them support finding that a notice to cure provision survives a bankruptcy discharge. *See, Lilly c. Bayview Loan Servicing, LLC*, 2017 U.S. Dist. 164237, *14, 2017 WL 4410040 (M.D. Fla. Oct. 4, 2017) (rejecting servicer's claim that post-discharge case should be dismissed for failing to satisfy a notice to cure, "none of the cases cited by defendant involved a situation in which the debtor has obtained a discharge in bankruptcy...defendant otherwise sites no authority for the proposition that the debtor would still be bound by the provisions of the discharged debt.").

To recap, "[n]otice and cure provisions "do not apply to suits alleging deceptive business practices (i.e., non-disclosures under TILA), because TILA claims 'arise out of' alleged violations of the statute, rather than from any breach of contract." *Taub*, 950 F. Supp. 2d at 701-02. And as explained by the court in *Schwarz v. Comenity Capital Bank,* 13-cv-4896, 2015 U.S. Dist. LEXIS 11940 (S.D. N.Y. Feb. 2, 2015), the nature of the alleged violation is what controls the application of a notice to cure provision:

> [T]he plaintiff alleges that the defendant violated TILA by failing to provide the required disclosure in connection with opening the credit account. The present claim does not arise out of the credit card agreement between the customer and the creditor, and therefore, notice to the creditor is not a precondition to suit.

*Id.* at *30. *See also, Stovall v. SunTrust Mortg. Inc.*, 2011 U.S. Dist. LEXIS 106137 *20, 2011 WL 4402680 (D. Md. Sept. 20, 2011) ("As the majority of Stovall's claims involve allegations of deceptive business practices, this Court finds that the notice-and-cure provision in the Deed of Trust does not warrant dismissal of the case."); *Gerber v. First Horizon Home Loans Corp.*, 2006 U.S. Dist. LEXIS 12225, *3, *8-*9 (W.D. Wash. March 8, 2006) (holding that notice to cure did not bar claims brought pursuant to a state Consumer Protection Act). Research has located any decisions where Defendant has obtained dismissal based upon a borrower's failure to comply with notice to cure clause.

In conclusion, Defendant's Motion to Dismiss should be denied because there is no merit to Defendant's notice to cure argument.

### B. The Mortgage Statement Violates the FDCPA

Section 1692e(2) of the FDCPA prohibits "the false representation of the character, amount, or legal status of any debt." Section 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt." The Mortgage Statement Exhibit A is a "communication" as defined by 15 U.S.C. § 1692a(2) because it conveyed information regarding a mortgage debt and demanded

payment. Dkt. 1, ¶45. The Mortgage Statement attempted to collect a consumer debt as defined by Section 1692a(5) of the FCPA because the Mortgage Statement sought to collected a debt allegedly owed to the U.S. Bank, N.A. which *was* incurred for "personal, family, or household purpose." *Id.* at ¶¶ 46-47. Defendant violated the FDCPA by falsely representing that Plaintiffs owed $309,456.68 to Defendant. "A demand for immediate payment while a debtor is in bankruptcy is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). Dkt. 1, ¶¶ 49-55. The Mortgage Statement, is not the model of clarity, and at the very least, a plausible claim for consumer confusion exists.

Defendant ignores the fact that it lost summary judgment on the issue of whether the issuance of mortgage statements in Sellers constituted the collection of a debt. Notably, Judge Corrigan rejected Defendant's argument that certain disclaimer language explained that it was not attempting to collect the subject debt. *Sellers*, 2017 U.S. Dist. 67120, *9-*10 (citing *Randolph*, 368 F.3d 726, *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). Notably, Judge Corrigan parenthetically noted that Turner reversed summary judgment in favor of debt collector on claim under § 1692e(2)(A) in part because a reasonable jury could conclude debt collector's collection letter implied that the discharged debt was still payable. Judge Corrigan agreed with the Sellers that a repeated payment demand, by a specific date, for a specific amount overshadowed any disclaimer language and that rightly felt that because they were discharged in bankruptcy they should not have been send a quest for payment. *Id.* *12-*17. Again, Judge Corrigan rejected Defendant's Motion to Reconsider which relied on a newly issued case, *Hellman v. Bank of America*, 685 Appx. 723 (11th. Cir. 2017). 2017

U.S. Dist. 20336, *3-*4. Defendant did not cite to *Helman* in its Motion to Dismiss. While all of the language in the mortgage statement in *Sellers* is not identical, the subject Mortgage Statement in this case constitutes a plausible FDCPA violation because attempts to collect an amount that Plaintiffs did not owe (Dkt. 1, ¶¶ 53-55) and does so in a confusing manner. *See also, Williams,* 2018 U.S. Dist. LEXIS 55151, *3, *17-*26 (denying summary judgment to Defendant in discharge related FDCPA claims).

Defendant's reliance on *Cardona v. FCI Lender Serv. Inc.*, (dkt. 17, p. 9) is misplaced. First, *Cardona* was decided at the summary judgment stage. Second, the language utilized by Defendant is not the same as the more robust disclaimer language that was used by the defendant in *Cardona*. As the 11th Circuit recognized in *Helman*, rulings must be made "under the circumstances of th[e] case[.]" 685 Appx. At 728. Third, *Cardona* recognized that the defendant lead off with a bankruptcy-based disclaimer, a significant distinction to the court (and the opposite took place here). 2017 U.S. Dist. 131908, *7. The remaining cases cited by Defendant are factually distinguishable based upon their pleading stage (*Lovegrove v Ocwen* was a summary judgment ruling) and the interplay of competing collection and disclaimer language (contrary to Defendant's reading of *Helman v. Udren Law Offices, P.C.*, the Statement in this case clearly demanded a payment by a specific due date). At the motion to dismiss stage, this Court should follow *Harrer v. Bayview Loan Servicing, LLC*, 206 U.S. Dist. 164872 (N.D. Ill. Nov. 30, 2016) where Judge Durkin's "common sense" opinion in rejected a servicers reliance on similar "[i]f you are in Bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect a debt against you personally, but is notice of a possible enforcement of a lien against the property". *See also, Azari v. Seterus, Inc.*, 2016 U.S. Dist. LEXIS 143139 (N.D. Ill. Oct. 17, 2016).

Accordingly, Defendant's Motion to Dismiss should be denied.

> Counsel for Plaintiffs,
>
> */s/ James C. Vlahakis*
>
> James C. Vlahakis
> **SULAIMAN LAW GROUP, LTD.**
> 2500 S. Highland Ave. Suite 200
> Lombard, Illinois 60148
> +1 630-575-8181
> jvlahakis@sulaimanlaw.com

**PROOF OF SERVICE**

 I certify, that on October 31, 2018, I filed the above document with the Clerk of the Court via the District's ECF filing system, and note that the clerk will send electronic notice of this filing to all counsel of record.

<div style="text-align: right;">

*/s/ James C. Vlahakis*

James C. Vlahakis
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Ave. Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jvlahakis@sulaimanlaw.com

</div>