# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICOLE T. WORTMAN and SHANE W. WORTMAN, individual, and on behalf of all others similarly situated, | Case No.: 1:18-cv-04894 |
| Plaintiffs, | The Honorable John J. Tharp Jr. |
| v. | |
| RUSHMORE LOAN MANAGEMENT SERVICES, LLC | |
| Defendant. | |

## RUSHMORE LOAN MANAGEMENT SERVICES LLC'S
## REPLY IN SUPPORT OF ITS RULE 12 (b)(6) MOTION TO DISMISS

If the Wortmans believed that Rushmore's mortgage statement improperly sought to collect from them personally despite their bankruptcy discharge, their remedy was not to file a federal class action lawsuit. Their mortgage contains a notice and cure provision designed to prevent avoidable litigation. Had the Wortmans alerted Rushmore that they were confused by the mortgage statement given their bankruptcy discharge, Rushmore could have (and almost certainly would have) explained that it recognized the Wortmans' discharge, was not seeking to collect from the Wortmans' personally, and was simply informing the Wortmans of the amount due on the (still-existing) lien encumbering their property. That would have ended the confusion without litigation, which is exactly what the notice and cure provision is intended to do. The Wortmans' failure to provide Rushmore with a proper notice and opportunity to cure mandates dismissal.

Independent of their failure to comply with the notice and cure provision, the Wortmans' claim fails because Rushmore's statement was not a confusing attempt to collect a debt even when viewed from the perspective of an unsophisticated consumer. Unsophisticated consumers

are not "dimwits" and are not treated as such under the law; they are expected to read and understand relevant orders and communications. The Wortmans obtained a bankruptcy discharge that specifically informed them that "[t]his order means that no one may make any attempt to collect a discharged debt from the debtors personally." They then received a mortgage statement from Rushmore that states "if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt." Given that clear disclaimer, the unsophisticated consumer that has received a bankruptcy discharge would not be misled by Rushmore's account statement, and for that additional reason, this Court should dismiss.

**ARGUMENT**

I. **The notice and cure provision is designed for this situation and the Wortmans' failure to comply mandates dismissal.**

The Wortmans do not dispute that the notice and cure provision of the mortgage applies to all claims that relate to or arise out of the mortgage. They also do not dispute that they did not comply with the notice and cure provision of the mortgage. Instead, they raise a scattershot of arguments, none of which have merit.

   A. **The public policy analysis in *Abercrombie* is limited to a claim premised on the failure to comply with TILA's notice requirement, which is materially distinct from the FDCPA claim at issue here.**

The Wortmans' first argument is that requiring them to comply with the notice and cure provision would undercut the consumer protection public policy of the FDCPA. (D.E. 22, Resp. at pp. 8-10). Their primary authority is *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006 (N.D. Ill. 2006), in which Judge Kennelly held that the plaintiffs did not need to comply with the notice and cure provision before proceeding with their TILA disclosure claim.

*Abercrombie* is logically sound, but it is not applicable here. Judge Kennelly first noted that "TILA was enacted 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" *Abercrombie*, 417 F. Supp. 2d at 1007 *quoting* 15 U.S.C. § 1601. In other words, the purpose of TILA is to ensure borrowers receive requisite disclosures designed to help them understand their mortgage loan, and if they so desire shop for different mortgage loan options, **before** they execute the mortgage. With that policy in mind, Judge Kennelly stated:

> Enforcement of the notice and cure provision in Wells Fargo's contract would utterly defeat this central purpose of TILA. The provision requires the borrower, upon discovery of Wells Fargo's noncompliance with TILA's disclosure requirements, to give Wells Fargo a chance to take corrective action. ***But any such corrective action would, by definition, come too late to permit the borrower to compare credit terms: by that point, the borrower has already contracted with Wells Fargo and no longer has a choice among potential lenders.***

*Abercrombie*, 417 F. Supp. 2d at 1008 (emphasis added). Because Wells Fargo's TILA violation occurred and any damages flowing from that violation accrued before the mortgage was even executed, it was impossible for Wells Fargo to cure its violation even if Abercrombie had provided notice.[1]

The timing issue central to *Abercrombie* is not present in this case. The Wortmans are complaining about being confused by the mortgage statement, but had they notified Rushmore that they were confused, Rushmore could have directed them to the multiple bankruptcy disclaimers and explained that the statement was not seeking any payment from them personally.

---

[1] This same timing issue was also central to the decision in *Taub v. World Fin. Network Bank*¸ 950 F. Supp. 2d 698 (S.D.N.Y. 2013), which is the only other authority cited by the Wortmans to support their public policy argument. *Id.* at 702 ("[E]nforcement of the notice and cure provision here, as in *Abercrombie*, would essentially amount to a waiver of TILA's initial account-opening disclosure requirements, because Defendant would be able to provide deficient initial disclosures and remedy them only after the contract was signed.")

That would have advanced the public policy goals of the FDCPA by alleviating the Wortmans' confusion before it was too late, while also avoiding needless litigation.

> **B.  The Wortmans' claim arises from Rushmore's conduct pursuant to the mortgage.**

The Wortmans next make a half-hearted argument that the notice and cure provision does not apply because their claim regarding Rushmore's mortgage statement exists independently of the mortgage. (D.E. 22, Resp. at p. 10.). The Wortmans appear to take the position that because they are asserting an FDCPA claim related to deceptive business practices and not a breach of contract, the notice and cure provision does not apply. That is incorrect.

The notice and cure provision applies to breaches of the mortgage *or* any lawsuit "that arises from the other party's actions pursuant to" the mortgage. (D.E. 17, Mot. at Ex. 1, Mortg. at § 20.) Numerous cases addressing this issue, whether they be concerning FDCPA claims related to inspection fees, default statements after bankruptcy, or foreclosure fees, have found that the notice and cure provision applies despite the lack of any direct breach of mortgage claim. One court went so far as to say "there can be no doubt" that a claim asserting an FDCPA violation based on the sending of a mortgage-loan notice arises out of the mortgage and implicates the notice and cure provision. *Kurzban v. Specialized Loan Serv., LLC*, No. 17-cv-20713, 2018 WL 1570370, at *2 (S.D. Fla. Mar. 30, 2018); *see also Michael v. CitiMortgage, Inc.*, No. 16-CV-07238, 2017 WL 1208487, at *4 (N.D. Ill. Apr. 3, 2017) (dismissing FDCPA claim premised on servicing fees for failure to comply with the notice and cure provision of the mortgage); *Sandoval v. Wolfe*, No. 16-61856, 2017 WL 244111, at *3 (S.D. Fla. Jan. 19, 2017) (dismissing FDCPA claim premised on foreclosure fees for failure to comply with notice and cure provision.)

Here, the Wortmans complain that Rushmore sent them *mortgage* statements detailing the amounts making up the *mortgage* lien. (Compl. at ¶¶ 39-44). Rushmore was providing the Wortmans information pursuant to and about their mortgage because despite the Wortmans' bankruptcy discharge, the mortgage lien remains on their property. When the alleged statutory violation derives from a right or obligation set forth in the mortgage, the notice and cure provision applies.

The two out-of-circuit cases on which the Wortmans rely do not change the analysis. In *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11-CV-059, 2011 WL 1597658 (E.D. Va. Apr. 26, 2011), the plaintiffs alleged that Wells Fargo encouraged them to apply for loan modifications and then subsequently denied the modifications, telling the plaintiffs "that as long as The Mortgage was not delinquent, they would not qualify for a loan modification." 2011 WL 1597658 at *1 (quotation omitted). While Rushmore's alleged misconduct involves sending mortgage statements detailing the amounts making up the mortgage lien, Wells Fargo's conduct was far removed from any obligations arising from the mortgage itself. In *Gerber v. First Horizon Home Loans Corp.*, No. C05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006), the notice and cure analysis was perfunctory, with the court noting that "Defendants present no statutory or case authority and no further argument as to why Plaintiff's Consumer Protection Act claim is subject to a 12(b)(6) dismissal."[2] Rushmore has provided ample authority to support its position that the notice and cure provision applies because the Wortmans' FDCPA claim arises from Rushmore's actions pursuant to the mortgage.

---

[2] The analysis in *Patrick v. Teays Valley Trustees, LLC*, No. 3:12-CV-39, 2012 WL 5993163, at *9 (N.D. W.V. Nov. 30, 2012) was equally perfunctory, coming after the court already concluded (incorrectly) that the notice and cure provision could not be invoked by the loan servicer.

### C. Rushmore can enforce the notice and cure provision as an assignee of the original lender.

Not only does the notice and cure provision apply to the Wortmans' claim, but as the servicer of the loan, Rushmore is a proper party to enforce the provision. The Wortmans' argument to the contrary does not withstand scrutiny. (D.E. 22, Resp. at pp. 10-12.)

The mortgage expressly states that the "covenants and agreements of this Security Instrument shall…benefit the successors and assigns of Lender." (D.E. 17, Mot. at Ex. 1, Mortg. at § 13.) Rushmore is an assign of the original lender. The original lender acquired both the ownership of the Wortmans' mortgage loan and the servicing rights for the loan. (D.E. 17, Mot. at Ex. 1, Mortg. at § 20.) The mortgage then specifies that both the ownership of the loan and the servicing rights to the loan can be sold and assigned. (*Id.*). In other words, both subsequent owners of the loan and subsequent servicers of the loan are assignees of the original lender. When Rushmore began "servicing [the Wortmans'] mortgage loan…" (D.E. 1, Compl. at ¶ 38), it did so as an assignee of the lender and is entitled to enforce the notice and cure provision and other covenants of the mortgage.

This point—that a loan servicer is an assignee of the lender and therefore entitled to enforce the notice and cure provision—was explained in *Giotta v. Ocwen Loan Servicing, LLC*, 706 F.App'x 421, 422 (9th Cir. 2017). The Wortmans attempt to distinguish *Giotta* by arguing that "the case involved more than just a borrower suing a servicer" (Resp. at p. 12), but that is plainly wrong. In *Giotta* the ***only*** defendant was Ocwen Loan Servicing, LLC, the plaintiff's loan servicer.

Further, the other authority relied on by the Wortmans ignores the language of the mortgage specifically stating that the covenants and agreements in the mortgage "benefit the successors and assigns of Lender." *See Patrick*, 2012 WL 5993163; *Schmidt*, 2011 WL 1597658.

By contrast, *Giotta* and its progeny analyzed the entire mortgage document and correctly determined that "the Loan Servicer is an assignee of the Lender with respect to the collection of loan payments and is therefore entitled to relief under Section 20." *Smith v. Flagstar Bank, FSB*, 2018 WL 3995922, at *4 (N.D. Cal. Aug. 21, 2018) *citing Giotta*, 706 F.App'x 421.

### D. The mortgage was not eliminated by the Wortmans' bankruptcy discharge.

The Wortmans' final argument is that the notice and cure provision does not apply because the mortgage did not survive the Wortmans' bankruptcy discharge. (Resp. at p. 12.). In support of this argument the Wortmans cite *Lilly v. Bayview Loan Servicing, LLC*, Case No. 2:17-cv-345-FtM-99MRM, 2017 WL 4410040, at *5 (M.D. Fla. Oct. 4, 2017), which rejected defendant's notice and cure argument and stated that "defendant otherwise sites [sic] no authority for the proposition that a debtor would still be bound by the provisions of [the] discharged debt." The Middle District of Florida's position is inconsistent with U.S. Supreme Court precedent which unanimously held that a mortgage survives a bankruptcy discharge. *See First Federal Sav. Bank of Provios TP. v. Drovers Nat'l Bank of Chicago*, 6060 N.E.2d 1253, 1258 (Ill. Ct. App. 1992) *citing Johnson v. Home State Bank*, 501 U.S. 78 (1991) ("the Supreme Court held unanimously that a discharge in bankruptcy extinguishes only the creditor's right to proceed *in personam* against the defaulting debtor…"); *see also Baines v. City of Chicago*, 584 B.R. 723, 726 (N.D. Ill. 2018) ("For well over a century, courts repeatedly have reaffirmed 'the venerable principle of *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) * * * that bankruptcy law permits a lien to pass through bankruptcy unaffected provided that it's a valid lien and secures a valid claim.'") *quoting Palomar v. First American Bank*, 722 F.3d 992, 993 (7th Cir. 2013).

\* \* \*

The Wortmans had an obligation to notify Rushmore of their purported confusion about their mortgage statement and give Rushmore an opportunity to cure or explain. Had they done so, any confusion would have been alleviated and this lawsuit avoided. Because the Wortmans failed to do so, this Court should dismiss their claim.

II. **The mortgage statements are informational and thus not actionable under the FDCPA.**

Curiously, after adamantly arguing at the presentment of Rushmore's motion to stay against the persuasive value of rulings from the Middle District of Florida in the *Sellers* action, the Wortmans now rely almost entirely on rulings from *Sellers* to support their contention that Rushmore's mortgage statement[3] was sent in connection with an attempt to collect a debt. (D.E. 22, Resp. at pp. 14-15.) If the Wortmans' response represents a shift in the Wortmans' position regarding staying this proceeding to await the 11th Circuit's ruling on *Sellers*, Rushmore is in agreement. But if the Wortmans continue to believe that *Sellers* has no bearing on the results of this case, then their response brief is largely bereft of support.

The Wortmans' primary non-*Sellers* argument is an effort to distinguish the *Cardona* case, in which Judge Gettleman held that a communication containing a bankruptcy disclaimer even less robust than that contained in Rushmore's mortgage statement did not violate the FDCPA because "[t]he only reasonable interpretation of the letter, even to an unsophisticated consumer, is that it was intended for informational purposes only, and not an attempt to collect a debt, when received by a person, like Plaintiff, whose debt has been discharged in bankruptcy." *Cardona v. FCI Lender Serv., Inc.*, Case No. 17 C 1278, 2017 WL 3531492, at *3 (N.D. Ill. Aug. 16, 2017).

---

[3] The Wortmans response claims that Rushmore also "violated the FDCPA" by sending a Notice of Intent to Foreclose, but the Wortmans' complaint is premised only on the mortgage statement, not the Notice of Intent to Foreclose. (*See* D.E. 1, Compl. at ¶¶ 51, 52.)

***First***, the Wortmans argue that *Cardona* is inapplicable because it "was decided at the summary judgment stage." (Resp. at p. 15.) The Wortmans are correct that *Cardona* was decided pursuant to Rule 56, but the decision was not based on a motion for summary judgment. The *Cardona* court converted FCI's Rule 12(b)(6) motion to dismiss to one for summary judgment because it included an affidavit and a letter that were outside the pleadings. *Cardona*, 2017 WL 3531492 at *1. But the court's decision was ultimately not based on anything outside the scope of the pleadings. Instead it was premised on the language of the mortgage statement and "[o]bjectively evaluating the purpose and context of [the mortgage statement] as a whole…" *Id.* at *3. Objectively analyzing Rushmore's mortgage statement—whether under Rule 12(b)(6) or Rule 56—confirms that it was not sent in an attempt to collect a debt.

***Second***, the Wortmans claim that Rushmore's statement constitutes an attempt to collect a debt because the disclaimer language in *Cardona* was "more robust." (Resp. at p. 15.) This claim is demonstrably false; in fact, Rushmore's disclaimer is more "robust." The *Cardona* disclaimer states:

> IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.

(D.E. 20, Mot. at Ex. 2, Cardona statement at p. 2.) The dual disclaimers in the Wortmans' statement read:

> [I]f you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

(D.E. 1, Compl., Ex. A at pp. 1, 6.) Both disclaimers indicate that if the borrower is in bankruptcy or received a bankruptcy discharge then the statement is for informational purposes only and not an attempt to collect a debt. (*Id*.) But Rushmore's mortgage statement also states

that it "does not constitute a notice of personal liability with respect to the debt." (*Id*.) Plus, Rushmore's statement contains two bankruptcy disclaimers with one of them on the first page, while the *Cardona* statement only contains a single disclaimer on the second page. Under the objective analysis detailed in *Cardona* and required by *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010), Rushmore's statement does not amount to an attempt to collect a debt.

*Third*, the Wortmans assert that Rushmore's statement amounts to an attempt to collect a debt because the disclaimer language comes after the standard mini Miranda, while in *Cardona* it comes before. (D.E. 22, Resp. at p. 15.) The Wortmans claim that the order of the bankruptcy disclaimer was a "significant distinction" in *Cardona*. (*Id.*) In fact, however, there is no logical reason to believe that having the mini Miranda before the bankruptcy disclaimer is more misleading than having the mini Miranda after the bankruptcy disclaimer, and the *Cardona* court does not hold otherwise. Moreover, the *Cardona* opinion makes clear that to determine if a communication is an attempt to collect a debt under the FDCPA requires an objective evaluation of the *entire* communication at issue. *Cardona*, 2017 WL 3531492 at *3. When the Rushmore statement, which contains multiple explicit disclaimers pronouncing that the statement is "for information purposes only" and not "a notice of personal liability," is evaluated in its entirety, no reasonable objective analysis could find the statement to be an attempt to collect a debt.

The Wortmans also filed supplemental authority in the form of a decision from Judge Lefkow in *Alic v. Heavner, Beyers & Mihlar, LLC,* Case No. 18 C 3635. (D.E. 32). That decision does not change the equation. The communication there was from a law firm not a servicer, and was not a mortgage statement but a "Notice Regarding Fair Debt Collection Practices Act." Moreover, the first paragraph stated "[p]lease be advised that your account has been referred to our firm to file a foreclosure action against 4511 N. Christina, Chicago, IL 60625. This is an

attempt to collect a debt, and any information obtained will be used for that purpose." This was not followed by a bankruptcy disclaimer; there was a bankruptcy disclaimer, but it was only on the last page, removed from the mini Miranda. By decoupling the disclaimer and the mini Miranda (and leaving the disclaimer on the last page), the "Notice" created the potential for confusion that Rushmore's mortgage statement does not. A communication must be evaluated in its entirety to determine whether it is informational or in connection with an attempt to collect a debt. *Gburek*, 614 F.3d at 385. *Alic* concerns a different type of communication from a different type of party in a different format and containing different information. It does not assist in adjudicating this case.

\* \* \*

The unsophisticated consumer possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004). When the Wortmans received a bankruptcy discharge, they were made expressly aware that they faced no personal liability on discharged debts. Rushmore's mortgage statement reiterates that point in a clear and conspicuous disclaimer. Accordingly, the reasonable unsophisticated consumer would not be misled by Rushmore's mortgage statement into believing they owed the debt personally, and this Court should dismiss.

## CONCLUSION

For the reasons stated above and in Rushmore's motion to dismiss, this Court should dismiss the Wortmans' complaint with prejudice.

Dated: November 20, 2018

Rushmore Loan Management Services LLC

By: /s/David F. Standa
  One of Its Attorneys

Ryan M. Holz
*rholz@lockelord.com*
David F. Standa
*dstanda@lockelord.com*
LOCKE LORD LLP
111 South Wacker Dr.
Chicago, Illinois 60606
Telephone: 312.443.0700

## **CERTIFICATE OF SERVICE**

I, David F. Standa, an attorney, on oath state that on November 20, 2018, a true and correct copy of the preceding Reply was filed and served via the Court's ECF System.

                                                        /s/David F. Standa